UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACK L. WEBER, III, and
JACQUELINE L. WEBER,

Case No. 16-CV-06620

      Plaintiffs,

Honorable Thomas M. Durkin
Judge Presiding

v.

SETERUS, INC.,

      Defendant.

_____/

**SETERUS'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

      Defendant, Seterus, Inc. ("Seterus"), by its attorneys, submits the following memorandum

in support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 against Plaintiffs,

Jack L. Weber III and Jacqueline L. Weber (collectively "Borrowers).

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

STATEMENT OF MATERIAL FACTS ...................................................................1

ARGUMENT ..............................................................................................................1

I.   Seterus Properly Maintained the Escrow Account for the Subject Loan...............................1

   a.   The Escrow Account was Properly Established by Bank of America.............................2

   b.   Seterus Properly Maintained the Escrow Account Following the Service Transfer ........4

II.  The Borrowers' Breach of Contract Claims Fail as a Matter of Law ....................................5

   a.   Seterus is Not a Party to the Loan Documents or the Settlement Agreement .................5

   b.   Seterus Did Not Breach the terms of the Mortgage or Settlement Agreement................6

III. Seterus Did Not Violate RESPA...........................................................................................8

IV.  Judgment is Appropriate in Seterus's Favor on Borrowers' FDCPA Claims ......................9

   a.   Seterus Did Not Make Any False Representations in Violation of Section 1692e ........10

   b.   Seterus Did Not Act in an Abusive, Harassing or Oppressive
     Manner or Commit Any Unfair or Unconscionable Acts in
     violations of Section 1692d or 1692f ...........................................................................14

   c.   Bona Fide Error...........................................................................................................15

V.   Seterus Did Not Violate ICFA ............................................................................................16

VI.  Seterus Did Not Cause Borrowers' Alleged Damages ........................................................18

VII. No statutory damages under RESPA for Pattern and Practice .............................................19

# TABLE OF AUTHORITIES

**Cases:**

*Arriaga v. Wells Fargo Bank, N.A.*,
Case No. 9-cv-2115, 2013 U.S. Dist. LEXIS 46864 (N.D. Ill. Mar. 27, 2013)............................18

*Avila v. CitiMortgage, Inc.*, 801 F.3d 777 (7th Cir. 2015) ...................................................5, 18

*Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998)..............................................12

*Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d 1126 (11th Cir. 2014) .........................................9

*Bonfiglio v. Citifinancial Servicing, LLC*,
Case No. 14 C 9254, 2015 U.S. Dist. LEXIS 128215 (N.D. Ill. Sept. 23, 2015) ...........................6

*Cannon v. Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025 (N.D. Cal. 2013) ................................6

*Christenson v. CitiMortgage, Inc.*,
Case No. 16-cv-03080, 2017 U.S. Dist. LEXIS 84316 (D. Colo. June 1, 2017)............................8

*Cohen v. American Sec. Ins. Co.*, 735 F. 3d 601 (7th Cir. 2013)..................................................17

*Dailey v. CITI Residential Lending*,
MDL No. 1715, 2008 U.S. Dist. LEXIS 99240 (N.D. Ill. Dec. 2, 2008) .....................................17

*De Bouse v. Bayer AG*, 922 N.E.2d 309 (Ill. 2009) ...............................................................16, 18

*Fields v. Wilber Law Firm, P.C.,* 383 F.3d 562 (7th Cir. 2004)....................................................12

*Finster v. U.S. Bank Nat'l Ass'n*,
Case No. 15-cv-1044, 2017 U.S. Dist. LEXIS 44984 (M.D. Fla. Mar. 28, 2017) .......................11

*Fournier v. Bank of America Corp.*,
Case No. 13-cv-00702, 2014 U.S. Dist. LEXIS 13447 (N.D. N.Y. Feb. 2, 2014) .......................20

*Fuoco v. Bank of America, N.A.,* 115 F. Supp. 3d 874 (E.D. Mich. 2015)....................................4

*Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010) ..............................................11

*Goldstein v. Lustig*, 507 N.E.2d 164 (Ill. App. Ct. 1987) ..............................................................7

*Gresham v. Wells Fargo Bank, N.A.*, 642 Fed. Appx. 355 (5th Cir. 2015) ....................................8

*Heffron v. Green Tree Servicing, LLC*,
Case No. 15-cv-0996, 2016 U.S. Dist. LEXIS 804 (N.D. Ill. Jan. 5, 2016) .................................15

*Hukic v. Aurora Loan Servs.*,
Case No. 05-cv-4950, 2007 U.S. Dist. LEXIS 64629 (N.D. Ill. Aug. 31, 2007) .........................18

*Isaac v. RMB, Inc.*,
Case No. 12-cv-2030, 2014 U.S. Dist. LEXIS 40840 (N.D. Ala. Mar. 26, 2014) .......................14

*Jackson v. South Holland Dodge, Inc.,* 755 N.E.2d 462 (Ill. 2001) ...............................................17

*Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168 (11th Cir. 1985).......................................................14

*Kaplan v. Shure Bros., Inc.,* 266 F.3d 598 (7th Cir. 2001)..............................................................6

*Kort v. Diversified Collection Servs.,* 394 F.3d 530 (7th Cir. 2005) ..............................................15

*Lage v. Ocwen Loan Servicing LLC,* 839 F.3d 1003 (11th Cir. 2016) ............................................8

*Maxwell v. Fairbanks Capital Corp.,* 281 B.R. 101 (Bankr. D. Mass. 2002) ...............................20

*Miller v. HSBC Bank USA, N.A.,*
Case No. 13-cv-7500, 2015 U.S. Dist. LEXIS 16736 (S.D.N.Y. Feb 11, 2015)............................8

*Moore v. Seterus, Inc.,* Case No. 15-cv-0612,
2016 U.S. Dist. LEXIS 174151 (S.D. Ala. Dec. 16, 2016) ....................................................11, 19

*Owens v. LVNV Funding, LLC,* 832 F.3d 726 (7th Cir. 2016) ......................................................13

*Ploog v. HomeSide Lending, Inc.,* 209 F.Supp.2d 863 (N.D. Ill. 2002) .......................................20

*Potoczny v. Aurora Loan Servs., LLC,* 33 F.Supp.3d 554 (E.D. Pa. 2014) ................................3, 5

*Renfroe v. Nationstar Mortgage LLC,* 822 F.3d 1241 (11th Cir. 2016).......................................20

*Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951 (Ill. 2002).....................................16, 17

*Ruth v. Triumph Partnerships,* 577 F.3d 790 (7th Cir. 2009).......................................................13

*Taylor v. Fink,* Case No. 9-cv-4941
1994 U.S. Dist. LEXIS 16821 (N.D. Ill. Nov. 23, 1994).............................................................14

*Teeuwissen v. JP Morgan Chase Bank, N.A.,*
902 F. Supp. 2d 826 (S.D. Miss. 2011)..............................................................................1, 3, 4, 5

*In re Tomasevic,* 273 B.R. 682 (Bankr. M.D. Fla. 2002) ..............................................................20

*Trunzo v. Citi Mortg.,* 876 F. Supp. 2d 521 (W.D. Pa. 2012)..........................................................6

*Washington v. Portfolio Recovery Assocs., LLC,*
211 F.Supp.3d 1041 (N.D. Ill. 2016) .......................................................................................12, 13

*Whittaker v. Wells Fargo Bank, N.A.,*
Case No. 12-cv-98, 2014 U.S. Dist. LEXIS 151087 (M.D. Fla. Oct. 22, 2014) ...........................9

*Zemke v. City of Chicago,*
Case No. 95-cv-1961, 1995 U.S. Dist. LEXIS 18243, at*8 (N.D. Ill. Dec. 7, 1995) .....................5

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 3

**Federal Statutes and Regulations**

12 U.S.C. § 2601 .......................................................................................................................1
12 U.S.C. § 2605 ...........................................................................................................9, 11, 19
15 U.S.C. § 1692 .......................................................................................................................1
15 U.S.C. § 1692d ...................................................................................................................14
15 U.S.C. § 1692e ...................................................................................................................12
15 U.S.C. § 1692f ....................................................................................................................14
15 U.S.C. § 1692k ...................................................................................................................15
12 C.F.R. § 1024.17 ..........................................................................................................4, 5, 10
12 C.F.R. § 1024.35 ...........................................................................................................8, 11

**Illinois Statutes**

815 ILCS 505/1 ........................................................................................................................1
815 ILCS 505/2 ......................................................................................................................17

## INTRODUCTION

Borrowers attempt to manufacture a claim against Seterus for alleged issues arising from the escrow account established for their mortgage loan ("Subject Loan") by the prior servicer, Bank of America, N.A. ("BANA"). All of their purported causes of action against Seterus fail because Seterus fully complied with the controlling terms of the Subject Loan, and did not take any action which was not authorized or otherwise violated any alleged statute or regulation.

For their Complaint, Borrowers allege four purported causes of action against Seterus: 1) Breach of Contract (Count Five); 2) a violation of the federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") (Count Seven); 3) a violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") (Count Eight); and 4) a violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA") (Count Nine).

As described in greater detail below, the undisputed facts demonstrate that judgment is appropriate in Seterus's favor and against the Plaintiffs on all counts in the Complaint pursuant to Federal Rule of Civil Procedure 56(a).

## STATEMENT OF MATERIAL FACTS

Seterus incorporates herein by reference its concurrently filed, pursuant to Local Rule 56.1 (a)(3), Statement of Material Facts ("SOMF").

## ARGUMENT

### I.  Seterus Properly Maintained the Escrow Account for the Subject Loan.

Contrary to the allegations of the Borrowers the Escrow Account was created by BANA following their receipt of a notice of delinquency from the McHenry County Tax Assessor. *See* SOMF ¶¶ 16, 17. Further, even if BANA somehow did err in establishing the Escrow Account, that error was cured when the refund proceeds were applied to the Escrow Account, and there was

no error by Seterus in maintaining the account following the service transfer due, in part, to the deficiency balance in the Escrow Account.  SOMF ¶¶ 26, 28, 31.

    **a.  The Escrow Account was Properly Established by Bank of America.**

Pursuant to the terms of the Mortgage, an escrow account is generally established for the payment of property taxes and other items.  *See* SOMF ¶ 9; Mortgage (Ex. A-2) § 3.  Only where the lender has agreed in writing to waive the escrow requirement is the borrower responsible to pay the property taxes directly.  *See* SOMF ¶ 9; Mortgage (Ex. A-2) § 3.  Importantly, the Mortgage allows for the lender to revoke the waiver "as to any or all Escrow Items ***at any time by a notice given in accordance with Section 15***."  *See* SOMF ¶ 9; Mortgage (Ex. A-2) § 3 (emphasis added).  The Mortgage does not impose any preconditions and does not require any "cause" prior to revocation – simply put, the determination as to whether or not to revoke an escrow waiver is entirely within the unilateral purview of the lender.  *See Teeuwissen v. JP Morgan Chase Bank, N.A.,* 902 F. Supp. 2d 826, 833 (S.D. Miss. 2011) (noting that identical provision provided servicer with "unambiguous and unconditional" authorization "to revoke plaintiffs' escrow waiver and to require escrow for payment of property taxes.")  Similarly, the Mortgage provides that following the borrower's failure to pay an escrow item pursuant to a waiver, "Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount." SOMF ¶¶ 9, 10; Mortgage (Ex. A-2) §§ 3, 9.

Other than providing that the Borrowers "will be responsible for paying and maintaining any and all real estate taxes and hazard insurance on the property ***pursuant to the terms of the original note and mortgage***" the Settlement Agreement between the Borrowers and BANA does not in any way alter the terms of the Note or Mortgage.  SOMF ¶¶ 12, 13 (emphasis added).

Pursuant to the incontrovertible testimony from BANA on or about June 8, 2015, it received notice from the McHenry County Tax Assessor that the property taxes due for the Subject Property were delinquent. SOMF, ¶¶ 16, 17, 42-44, 57-59. Based upon the information it received from the tax assessor, BANA acted in accordance with the terms of the Mortgage to remit payment for the property taxes and creating the escrow account "to protect our interests in the property." SOMF, ¶¶ 9, 10, 17; Mortgage (Ex. A-2) §§ 3, 9. It is for this reason alone, that the Borrowers' Complaint fails and judgment is appropriate in favor of Seterus.

Additionally, even if the June 2015 Property Taxes were improperly paid, the refund of these monies to the Subject Loan by BANA cured any such error. SOMF, ¶ 20. And, it was proper for BANA – and subsequently Seterus – to continue to maintain the Escrow Account because BANA revoked the waiver by notice to the Borrowers on June 19, 2015. Following the proper payment of the property taxes in June of 2015, BANA sent written notice to Borrowers informing them of the June 2015 Property Tax Payment, the creation of the Escrow Account, and that the amounts of their month payments due for the Subject Loan had increased. SOMF, ¶ 18. This June 19, 2015 correspondence constitutes notice of the revocation of the prior waiver to the escrow requirement pursuant to Section 3 of the Mortgage. *See e.g. Potoczny v. Aurora Loan Servs., LLC,* 33 F.Supp.3d 554, 567 (E.D. Pa. 2014) (determining that similarly worded escrow account statement constituted a revocation of escrow waiver); *Teeuwissen,* 902 F.Supp.2d at 833. Similarly, Seterus mailed Borrowers a similar escrow account statement following the service transfer which would further establish that the prior escrow waiver had been revoked. SOMF, ¶ 39.

Accordingly, the admissible evidence of record demonstrates that the Escrow Account was established in full compliance with the terms of the Mortgage and that the Borrowers were

provided with notice of the revocation of the escrow waiver which authorized BANA – and Seterus – to continue to maintain an escrow account for the property taxes. *See e.g., Teeuwissen,* 902 F.Supp.2d at 833; *Fuoco v. Bank of America, N.A.,* 115 F. Supp. 3d 874, 878 (E.D. Mich. 2015).

   **b. Seterus Properly Maintained the Escrow Account Following the Service Transfer**.

   Despite receiving notice of the creation of the Escrow Account and resulting changes to their monthly installment payments, the Borrowers continued to remit payments to BANA in the amount of their principal and interest only. SOMF, ¶¶ 19, 24, 25. Additionally, Borrowers made no effort to tender to BANA the property tax refund that they received in September of 2015 (the "August 2015 Refund"). SOMF, ¶¶ 26, 27. Consequently, the Subject Loan transferred to Seterus with a substantial deficiency balance in the Escrow Account. SOMF, ¶¶ 30-31.

   Notably, as acknowledged by Mr. Weber, he knew that when he received the August 2015 Refund that BANA had also paid for the property taxes. *See* Dep. of Jack Weber (Ex. D), p. 80:10-15. Additionally, Mr. Weber also knew that BANA was entitled the August 2015 Refund. *Id.*, at p. 80:16-19. Nevertheless, Borrowers made no attempt to remit the August 2015 Refund to either BANA or subsequently, Seterus. SOMF, ¶¶ 26, 27; Dep. of Jack Weber (Ex. D) pp. 79:4-15; 87:3-6. In fact, Mr. Weber never even attempted to inform BANA or Seterus that he received the August 2015 Refund. SOMF, ¶¶ 27, 45, Dep. of Jack Weber (Ex. D), at pp. 80:20-24, 81:1-5.

   RESPA by and through its enacting regulation – Regulation X – governs the duties and responsibilities of servicers in the creation and maintenance of escrow accounts on federally related mortgage loans. *See* 12 C.F.R. § 1024.17(a). Regulation X provides that following a service transfer the "new servicer shall treat shortages, surplusages and deficiencies in the transferred escrow account according to the procedures set forth in § 1024.17(f)." *See* 12 C.F.R. § 1024.17(e)(2). If a deficiency exists following a service transfer, Regulation X allows the new

servicer to "require the borrower to pay additional monthly deposits to the account to eliminate the deficiency." 12 C.F.R. § 1024.17(f). The Mortgage similarly provides that "[i]f there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA." Mortgage (Ex. A-2) § 3.

Here, the Borrowers' failure to tender the August 2015 Refund to BANA or Seterus was a breach of their obligations under Sections 3 and 9 of the Mortgage, and BANA and Seterus were explicitly authorized under the terms of the Mortgage to establish an escrow account to recover this deficiency. Moreover, in accordance with Regulation X, following the servicer transfer, Seterus mailed the Borrowers its New Mortgage Payment Notice and Escrow Account Disclosure Statement on January 18, 2016. This statement provided a summary of the anticipated escrow payments for the Subject Loan. SOMF, ¶ 39. As noted above, this escrow statement from Seterus to the Borrowers also constitutes a notice of revocation of the escrow waiver. *See e.g., Potoczny,* 33 F.Supp.3d at 567; *Teeuwissen,* 902 F.Supp.2d at 833.

Accordingly, Seterus was authorized by the terms of the Mortgage and RESPA to maintain the escrow account following the service transfer.

## II. The Borrowers' Breach of Contract Claims Fail as a Matter of Law.

The incontrovertible facts demonstrate that the Borrowers cannot establish the requisite elements for a breach of contract claim. *See Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015); *Zemke v. City of Chicago,* 1995 U.S. Dist. LEXIS 18243, at*8 (N.D. Ill. Dec. 7, 1995). Specifically, Borrowers cannot prove the existence of an agreement with Seterus or that there was a breach of the terms of the Mortgage or Settlement Agreement.

### a. Seterus is Not a Party to the Loan Documents or the Settlement Agreement.

Borrowers' breach of contract claims against Seterus are premised upon the Settlement Agreement and the Mortgage. *See generally,* Compl. However, Seterus is not a party to any of the loan documents or the Settlement Agreement, and for this reason alone, the Borrowers' breach of contract claim fails as a matter of law. SOMF, ¶¶ 7, 8, 9.

Under Illinois law a "cause of action based on a contract may be brought only by a party to that contract, by someone in privity with such a party, or by an intended third-party beneficiary of the contract." *Kaplan v. Shure Bros., Inc.,* 266 F.3d 598, 602 (7th Cir. 2001). Furthermore, as a general matter, unless the servicer of mortgage loan is a party to the loan agreements or is assigned the mortgage, courts across the country have routinely rejected attempts to assert breach of contract claims against loan servicers like Seterus. *See Bonfiglio v. Citifinancial Servicing, LLC*, Case No. 14 C 9254, 2015 U.S. Dist. LEXIS 128215, *21 (N.D. Ill. Sept. 23, 2015) (noting that "courts in other jurisdictions have not approved breach of contract claims against loan services when those servicers were not parties to the contract.") (citing *Cannon v. Wells Fargo Bank, N.A.,* 917 F. Supp. 2d 1025, 1052 (N.D. Cal. 2013); *Trunzo v. Citi Mortg.,* 876 F. Supp. 2d 521, 533 (W.D. Pa. 2012)).

Here, Seterus is not a party to any of the loan documents (i.e., the Note, the Mortgage (by assignment or otherwise), or the Settlement Agreement), and Borrowers do not and cannot point to the existence of any other agreement between Seterus and the Borrowers. SOMF, ¶¶ 7, 8, 9. Instead, Seterus is merely the servicer of the Subject Loan. SOMF, ¶ 3, 7. For this reason alone, Seterus is entitled to judgment on Borrowers' breach of contract claim.

### b. Seterus Did Not Breach the terms of the Mortgage or Settlement Agreement.

Even if Seterus was a party to the loan documents and Settlement Agreement – which it is not – Borrowers' breach of contract claim would nonetheless fail because Seterus did not breach

any of the terms. Borrowers allege that Seterus purportedly breached the Settlement Agreement and the loan documents by: 1) "continu[ing] to unilaterally impose escrow obligations;" 2) applying the Borrowers' payments to the principal, interest and escrow; 3) maintaining the Subject Loan in default; and 4) applying late fees and other default related expenses to the Subject Loan. *See* Compl., ¶¶ 160-165. The undisputed facts do not support these allegations.

As explained above, the creation of the Escrow Account by BANA and the maintenance of the Escrow Account by Seterus following the service transfer were appropriate and in accordance with the terms of the Mortgage. This analysis applies directly to defeat their breach of contract claims.

Following the escrowing of the taxes due for the Subject Property, Borrowers were obligated to make payments for the full monthly installment which included both the principal and interest due and the escrowed amounts. *See* Mortgage, § 3. Despite receiving notice from BANA – and subsequently Seterus – of their increased monthly mortgage payments, Borrowers continued to only remit payment for the principal and interest. *See* SOMF ¶¶ 19, 23-25. As a result, Borrowers breached the terms of the Subject Loan and fell into default. *See* Note, § 6(B); SOMF ¶¶ 28, 29. Because the Borrowers breached the material terms of the Subject Loan, they cannot attempt to otherwise enforce the agreement against Seterus. *Goldstein v. Lustig*, 507 N.E.2d 164, 168 (Ill. App. Ct. 1987) ("a party seeking to enforce a contract has the burden of proving that he has substantially complied with all the material terms of the agreement.")

Further, the Mortgage explicitly allows for the imposition of various fees and expenses – including but not limited to late fees – following the borrowers' default. *See* SOMF, ¶¶ 33-35; Note (Ex. A-1), § 6(A) (Late Fees); Mortgage, § 9 (expenses incurred in protecting lender's

interest); Mortgage, § 14 (default related fees and services).  Additionally, the Mortgage explicitly authorizes the acceptance of partial payments at its option.  *See* Mortgage, § 1.

For all of these reasons, Borrowers cannot prevail on their breach of contract claims against Seterus, and judgment should be entered in Seterus's favor.

## III.  Seterus Did Not Violate RESPA.

For their purported RESPA claim, Borrowers allege that Seterus failed to properly respond to their correspondence dated April 25, 2016 (the "NOE").  *See* Compl., ¶¶ 172-173, 183, 194-195.  Borrowers confuse this matter by referencing various other correspondence purportedly sent pursuant to various provisions of RESPA and Regulation X; however, their RESPA claim is premised solely upon the NOE.  *Compare* Compl., ¶¶ 55-71, *with,* Compl., ¶¶ 168-197.

As an initial matter, Borrowers' attempt to assert a claim under 12 C.F.R. § 1024.35 of Regulation X is misplaced as there is no actual private right of action for violations of this regulation.  *See Christenson v. CitiMortgage, Inc.,* 2017 U.S. Dist. LEXIS 84316, *7 n.9 (D. Colo. June 1, 2017); *Miller v. HSBC Bank USA, N.A.,* Case No. 13-cv-7500, 2015 U.S. Dist. LEXIS 16736, *25 (S.D.N.Y. Feb 11, 2015); *see also*, *Gresham v. Wells Fargo Bank, N.A.*, 642 Fed. Appx. 355, 359 (5th Cir. 2015); *but see, Lage v. Ocwen Loan Servicing LLC,* 839 F.3d 1003, 1007 (11th Cir. 2016) (recognizing cause of action through 12 U.S.C. 2605(e)).  For this reason alone, their claim fails as a matter of law.

Assuming that Borrowers intended to assert a claim pursuant to the qualified written request ("QWR") provisions of Section 2605 of RESPA, their claim fails nonetheless.  Upon receiving a QWR, a servicer has three options: (1) make corrections to the account, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction; (2) **conduct an investigation and provide the borrower with a written**

*explanation of the reasons why the servicer believes the account is correct*; or (3) conduct an investigation and provide the borrower with a written explanation of why the information requested is unavailable.  12 U.S.C. § 2605(e)(2).

Here, there is no dispute that Seterus timely acknowledged and responded to the NOE as required by RESPA and Regulation X.  SOMF ¶ 54.  Instead, Borrowers take issue with the results of Seterus's investigation into the alleged errors as explained in its June 1, 2016 response ("NOE Response").  *See e.g.,* Compl., ¶¶ 183-185.  But, "[RESPA] does not require the servicer to provide the resolution or explanation desired by the borrower; it requires the servicer to provide a statement of its reasons."  *Whittaker v. Wells Fargo Bank, N.A.,* 2014 U.S. Dist. LEXIS 151087, at *28-29 (M.D. Fla. Oct. 22, 2014), citing *Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d 1126 (11th Cir. 2014).  Indeed, "[a] reasonable explanation of the servicer's belief is sufficient, even if it is later determined that the belief is erroneous."  *Id.*

For their April 25, 2016 NOE to Seterus, the Borrowers identified three general alleged errors.  First, Borrowers claimed that Seterus continued BANA's actions of unilaterally and improperly imposing an escrow payment.  *See* Compl., ¶ 176; NOE (Ex. 19 to Compl.)  Second, Borrowers claimed that Seterus improperly applied payments.  *See* Compl., ¶ 177; NOE (Ex. 19 to Compl.)  Last, Borrowers claimed that Seterus improperly charged late fees for payments.  *See* Compl., ¶ 178; NOE (Ex. 19 to Compl.)  Notably absent from the NOE is any reference to the August 2015 Refund, and indeed, nowhere do Borrowers – through their counsel – even explicitly state that the property tax payments were timely paid or never delinquent.  *See* NOE (Ex. 19 to Compl.)

On or about June 1, 2016, Seterus responded to the NOE outlining its investigation and determination that no error has occurred ("NOE Response").  SOMF ¶¶ 52, 54-55; NOE Response

(Ex. M). Seterus includes with its response the supporting documents from its records which detail and support its investigation. *Id.* Specifically, Seterus includes correspondence from BANA dated February 29, 2016 which outlines BANA's investigation into the same alleged issues and Seterus's Customer Account Activity Statement in determining that the Escrow Account was properly created. *Id.; see also,* SOMF ¶¶ 42-44, 56; BANA February 29, 2016 Correspondence (Ex. G). Notably, the BANA correspondence specifically provides the reasoning for BANA establishing the Escrow Account: "Our research revealed that on June 8, 2015, BANA received notification from the McHenry County Tax Assessor that your property taxes were delinquent." SOMF ¶¶ 42-44; BANA February 29, 2016 Correspondence (Ex. G). The Customer Account Activity Statement details the payments received and how they were applied to the Subject Loan. NOE Response (Ex. M). Importantly, the Seterus NOE Response advises Borrowers that there currently exists an escrow account deficiency and "that until the escrow account deficiency is resolved, we must decline to close the escrow account and will continue to collect for taxes." *Id.; see also,* 12 C.F.R. § 1024.17(f); Mortgage (A-2) § 3.

In response to the suspense account alleged error, Seterus explained that when funds received are not sufficient to satisfy the next installment, the funds are placed in the loan suspense account as a partial payment until additional funds are received. Seterus relies upon the Account Activity Statement and deliberately details the monthly installment amounts due on the Subject Loan – "$2,591.55 ($519.61 to Principal, $922.41 to Interest, and $1,149.53 to Escrow)." NOE Response (Ex. M). Similarly, Seterus outlines the Borrowers' payment history from December 2015 through May 2016. *Id.*

Finally, Seterus informed Borrowers of the reasons behind the late fees charged to the Subject Loan. Specifically, Seterus recites the terms of the Note which provide for the assessment

of late fees which are received after a 15 day grace period past the first of the month. *Id.* Seterus declined to remove the late fees because it concluded correctly that the Borrowers had only made partial payments. *Id.*

   As seen above, in full compliance with the requirements of RESPA and Regulation X, the NOE Response: (1) separately addressed each error Borrowers raised; (2) provided facts supporting its determination that no error occurred; (3) directly provided the documents Seterus relied upon in reaching its determination that no error occurred; and (4) provided contact information if Borrowers wished to further discuss the contents of Seterus's response. 12 U.S.C. § 2605(e)(2); *see also,* 12 C.F.R. § 1024.35(e); *see e.g., Finster v. U.S. Bank Nat'l Ass'n,* Case No. 15-cv-1044, 2017 U.S. Dist. LEXIS 44984, *21-23 (M.D. Fla. Mar. 28, 2017); *Moore v. Seterus, Inc.,* Case No. 15-cv-0612, 2016 U.S. Dist. LEXIS 174151, *35-37 (S.D. Ala. Dec. 16, 2016).

## IV.   Judgment is Appropriate in Seterus's Favor on Borrowers' FDCPA Claims.

   For their FDCPA claims, Borrowers allege that Seterus violated § 1692d by "employing an unfair and unconscionable means to collect the subject debt" (Compl., ¶ 204); § 1692e(2) by "repeatedly and continuously" misrepresenting the character, amount or legal status of the Subject Loan including representations concerning the Escrow Account (Compl., ¶ 200); § 1692e(5) by threatening to foreclose (Compl., ¶ 201); § 1692e(10) by using false representations in its NOE Response; and § 1692f  because its conduct was an "unconscionable means to collect" the Subject Loan (Compl., ¶ 204).

   In this Circuit, it is well-settled that the FDCPA does not apply to every communication between a debt collector and a debtor. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-385 (7th Cir. 2010).  A communication is not subject to the FDCPA unless it is made "in

connection with the collection of any debt." *See, e.g.*, *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388-389 (7th Cir. 1998).

As an initial matter, under these standards, the Seterus NOE Response was not made for purposes of debt collection because it was required under RESPA and prompted by receipt of the Borrowers' QWR. *See, e.g., Bailey*, 154 F.3d at 388-389. Thus, the FDCPA does not apply to this communication because it was sent for purposes other than collection on the Subject Loan, i.e. to address the errors and issues raised by the Borrowers.

Moreover, all of the Borrowers' claims under the FDCPA must fail if, as demonstrated above, the Escrow Account was properly established and maintained by Seterus pursuant to the Mortgage, Note and RESPA. It simply would not be unfair, oppressive, abusive or unconscionable to enforce the terms of the agreement with the Borrowers. Similarly, it would not be false or deceptive for Seterus to assert its rights to collect for the escrowed amounts. Finally, as a result of the Borrowers' failure to pay the full amounts due on the Subject Loan, it was not improper, deceptive or false to charge the Borrowers for late fees and default related costs as authorized by the Mortgage, or for Seterus to proceed with foreclosure as a consequence of their default.

a. **Seterus Did Not Make Any False Representations in Violation of Section 1692e.**

The FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Claims brought under §1692e are evaluated under the Seventh Circuit's "objective standard of the 'unsophisticated consumer.'" *Washington v. Portfolio Recovery Assocs., LLC,* 211 F.Supp.3d 1041, 1048 (N.D. Ill. 2016); *see also, Fields v. Wilber Law Firm, P.C.,* 383 F.3d 562, 564 (7th Cir. 2004). Under this standard the court assumes that the debtor is "uniformed, naïve or trusting," but nonetheless possesses "rudimentary knowledge about the financial world" and is "capable of

making basic logical deductions and inferences." *Washington,* at 1048 (quoting *Fields,* 383 F.3d at 564). This standard does not apply to correspondence sent to a debtor's attorneys, and instead, the applicable standard is whether or not the communication is "unlikely to deceive a competent lawyer." *See Washington,* at 1048 (citing *Owens v. LVNV Funding, LLC*, 832 F.3d 726 (7th Cir. 2016)).

All of the Borrowers' claims brought under §1692e fail as a matter of law because they turn exclusively upon whether or not the Escrow Account was properly administered by Seterus. If, as demonstrated above the answer is "yes", then the Borrowers' admitted acts in remitting payments for less than the full amount due and owing caused their default on the Subject Loan. Further, upon their default, Seterus was authorized under the Subject Loan to charge late fees and other default related expenses to the Subject Loan. *See* SOMF, ¶¶ 33-35; Note (Ex. A-1), § 6(A) (Late Fees); Mortgage, § 9 (expenses incurred in protecting lender's interest); Mortgage, § 14 (default related fees and services). Consequently, the communications concerning the amounts due under the Subject Loan which included the escrowed amounts for property taxes, any communications indicating that late charges or other fees were incurred, and any default or foreclosure related correspondence were in no way false or deceptive.

Additionally, even if the Seterus NOE Response was sent for collection purposes – it was not – it should be viewed for deceptive or misleading statements under the less stringent standard of a "competent lawyer" because it was sent to Borrowers' counsel. *See* NOE (Ex. 19 to Compl.). Under this standard, it is even more apparent there is nothing on the face of the Seterus NOE Response that is misleading or deceptive as a matter of law and therefore, judgment is appropriate in Seterus's favor. *See Ruth v. Triumph Partnerships,* 577 F.3d 790, 800 (7th Cir. 2009).

### b. Seterus Did Not Act in an Abusive, Harassing or Oppressive Manner or Commit Any Unfair or Unconscionable Acts in violations of Section 1692d or 1692f.

Section 1692d states that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. To illustrate the type of conduct targeted by the statute, Section 1692d enumerates several practices that qualify as harassing, oppressive, or abusive behavior. *See id.* at 15 U.S.C. § 1692d(1)-(6) (threats of violence or harm to reputation, use of obscene language, coercion through advertised sale of debt). While this list is non-exhaustive, courts routinely hold that "[c]ausing embarrassment, inconvenience, or further expense is [] insufficient to constitute a violation of § 1692d." *Taylor v. Fink*, Case No. 9-cv-4941, 1994 U.S. Dist. LEXIS 16821, at * 16 (N.D. Ill. Nov. 23, 1994), citing *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1179 (11th Cir. 1985). "Instead, there generally must be some form of intimidation or similar conduct." *Taylor*, 1994 U.S. Dist. LEXIS 16821, at * 16; *Isaac v. RMB*, *Inc.*, Case No. 12-cv-2030, 2014 U.S. Dist. LEXIS 40840, at *24-25 (N.D. Ala. Mar. 26, 2014) (Section 1692d was passed to curb enumerated conduct and "other threatening and intimidating tactics").

Similarly, Section 1692f generally prohibits a debt collector from using an "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Here, Borrowers' sole allegations concern written communications which merely inform them of the status of the Subject Loan and the various transactions which occurred for the seven month period from the service transfer in December of 2015 to the filing of the Complaint in June of 2016. *See* Compl., ¶¶ 41-54; Payment Schedule Letter (Ex. 5 to Compl.); Insufficient Funds Letter (Ex. 6 to Compl.); Account Statement (Ex. 7 to Compl.); Payment Rejection Letter (Exs. 8, 9 to Compl.) There is no allegation that Seterus made any threatening phone calls or in person visits to the Borrowers. *See generally,* Compl. Similarly, other than utilizing standard default and foreclosure

14

related terms, there is no evidence that the tone used in any communication was otherwise abusive, threatening or intimidating. *See generally,* Compl. Therefore, none of the communications or acts by Seterus rise to the level necessary to be actionable under Section 1692d as abusive, oppressive or harassing, or as unfair and unconscionable under 1692f. *See e.g. Heffron v. Green Tree Servicing, LLC*, Case No. 15-cv-0996, 2016 U.S. Dist. LEXIS 804, *12-13 (N.D. Ill. Jan. 5, 2016) (attempts to collect on escrow amount authorized under the terms of the mortgage was not unfair or unconscionable). Accordingly, Borrowers cannot demonstrate any action taken by Seterus in which a reasonable jury could determine constituted a violation of Section 1692d or 1692f.

     **c. Bona Fide Error.**

Alternatively, to the extent that any possible FDCPA violation may have occurred, Seterus maintains reasonable policies and procedures to prevent such violations from happening which provides it with a bona fide error defense pursuant to §1692k of the FDCPA. Seterus can conclusively demonstrate the existence of reasonable procedures in place to prevent the incorrect placement of an escrow account or other servicing errors as to the mortgage loans it services. 15 U.S.C. § 1692k(c); *Kort v. Diversified Collection Servs*., 394 F.3d 530, 537 (7th Cir. 2005).

As part of its procedures to prevent, recognize, and correct errors boarded from prior servicers, Seterus maintains newly boarded account data integrity checks in order to ensure the accuracy of transferred loan account information. SOMF ¶¶ 36-38. Seterus also employs a team of employees to review newly boarded account information from other loan servicers to ensure accuracy of information. SOMF ¶¶ 36-38. All transferred loans are subjected to these policy and procedures and are reviewed to ensure properly boarded account information. SOMF ¶¶ 36-38. Despite these procedures, there was no indication in the on-boarding of the Subject Loan that an

error existed in the Subject Loan accounting including the Escrow Account. *See* Dep. of Kevin Foster (Ex. E), p. 33:9-19.

Accordingly, even if there was an FDCPA violation, it did not occur intentionally by Seterus, occurred based upon a bona fide error derived from the prior servicer's records and information, and occurred despite the existence of reasonable policies and procedures to prevent those errors.

## V. Seterus Did Not Violate ICFA.

Similar to their FDCPA claim, Borrowers allege that Seterus violated the ICFA by "engaging in an unfair and deceptive act or practice by using fraud, deception and misrepresentation" to move forward with foreclosure and by making the misrepresentation in the Seterus NOE Response by "wrongfully claiming that they did not commit any errors in imposing an escrow account" and "stating that BANA was notified by the McHenry County Tax Assessor on June 8, 2015, that the taxes for the Home were delinquent when no such contact was actually made." *See* Compl., ¶¶ 214-216. And, just as with their FDCPA claims, Borrowers' ICFA claims fail because Seterus acted appropriately in administering the Escrow Account and did not make any misrepresentations to the Borrowers.

ICFA is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against unfair and deceptive business practices. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). Claims may be brought under both deceptive and unfair conduct. *Robinson*, at 961; *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009) (reciting elements for ICFA claims). In determining whether or not a given course of conduct or act is unfair, ICFA provides that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

*See* 815 ICLS 505/2; *Robinson*, at 961.

As an initial matter, Seterus is not liable for the acts of BANA. Illinois courts have consistently and unambiguously rejected attempts to extend liability under the ICFA to anyone other than those who actively and directly participated in the alleged fraud or unfair practice. *See e.g., Jackson v. South Holland Dodge, Inc.,* 755 N.E.2d 462, 470-71 (Ill. 2001); *Dailey v. CITI Residential Lending,* MDL No. 1715, 2008 U.S. Dist. LEXIS 99240 *39-40 (N.D. Ill. Dec. 2, 2008) (collecting cases). To the extent that it was unfair for BANA to initially establish the Escrow Account, Seterus is not liable for that act. Importantly, Borrowers have already resolved its claims against BANA through a confidential settlement agreement which presumptively included compensation for any alleged damages caused by BANA's actions. *See* SOMF, ¶ 61.

Moreover, as established above, Seterus's acts in maintaining the Escrow Account were in compliance with the terms of the Subject Loan. Further, Seterus did not in any way violate the RESPA or FDCPA in its actions. As noted by the Seventh Circuit in *Cohen v. American Sec. Ins. Co.*, 735 F. 3d 601, 610 (7th Cir. 2013), there is nothing "coercive" or "unfair" "to threaten to invoke the contractual remedies available" under the terms of a residential mortgage. Indeed, the court in *Cohen* commented that "there is nothing oppressive or unscrupulous about giving a counterparty the choice to fulfill his contractual duties or be declared in default for failing to do so." *Id.* Here, Seterus's actions were not "illegal, immoral, or otherwise wrongful" and instead, Seterus has done nothing more than simply remind Borrowers of their obligations under the Mortgage and Note concerning the establishment of the Escrow Account and Borrowers' requirements to remit payment in full.

Additionally, Seterus did not make any misrepresentations in its NOE Response. Initially, as explained above, there was no "error" in Seterus maintaining the Escrow Account, and thus, it

17

could not be a misrepresentation to state the same. Further, Borrowers' intentionally distort the wording of the NOE Response because the NOE Response does not unequivocally state that "BANA was notified by the McHenry County Tax Assessor" that the property taxes were delinquent. Compl., ¶ 216. Instead, in direct reference to the BANA February 29, 2016 Correspondence, Seterus states in its NOE Response "[the BANA February 29, 2016 Correspondence] advises Mr. and Mrs. Weber that due to the notification (from the McHenry County Tax Assessor) on June 8, 2015 that the property taxes were delinquent, an escrow account was established pursuant to the terms of the original Note and Mortgage." *See* SOMF ¶¶ 55-56; NOE Response (Ex. M); BANA February 29, 2016 Correspondence (Ex. G). Accordingly, Seterus is entitled to judgment in its favor on the Borrowers' ICFA claim.

## VI. Seterus Did Not Cause Borrowers' Alleged Damages.

Borrowers' claims for breach of contract and alleged violations of RESPA and ICFA fail because they cannot establish that the damages were a proximate cause of the actions of Seterus. Actual damages caused by the offending act is a requisite element for each of these claims. *See Avila,* 701 F.3d at 786 (breach of contract); *De Bouse*, 922 N.E.2d at 313 (ICFA); *Arriaga v. Wells Fargo Bank, N.A.*, Case No. 9-cv-2115, 2013 U.S. Dist. LEXIS 46864, at *11 (N.D. Ill. Mar. 27, 2013) (granting defendant's motion for summary judgment when plaintiff produced no evidence of actual harm causally connected to alleged RESPA violation). Similarly, in Illinois, a plaintiff has a duty "to make reasonable effort to avoid damages" and a failure to do so is a bar to recovery justifying summary judgment. *See e.g., Hukic v. Aurora Loan Servs.,* Case No. 05-cv-4950, 2007 U.S. Dist. LEXIS 64629, *40 (N.D. Ill. Aug. 31, 2007).

Here, the Borrowers' alleged damages resulted from the acts of either the Borrowers themselves or BANA. *See* Compl., ¶¶ 81-85. It is undisputed that the Escrow Account was

established prior to the service transfer to Seterus. SOMF ¶¶ 15, 30, 31. It is also undisputed that the Borrowers refused to remit the increased monthly payment amount demanded by BANA to account for the escrowed property taxes, and instead, merely continued to remit payment in the insufficient amount for their principal and interest only. SOMF ¶¶ 24, 25. Finally, it is undisputed that Borrowers failed to tender the August 2015 Refund that they received in September of 2015. SOMF ¶¶ 22, 26-27, 45. As result, BANA determined that the Borrowers were in default prior to the service transfer. SOMF ¶¶ 28, 29. Consequently, at the time the Subject Loan transferred to Seterus, the Subject Loan was in a default status due to their insufficient payments and with a deficient escrow balance, and it is these events which resulted in each of the alleged damages claimed by Borrowers.

At the very least, Borrowers failed at every stage prior to litigation in this matter to attempt to mitigate their damages by tendering the August 2015 Refund they received or even informing BANA or Seterus that they had received it and were willing to tender. *See* SOMF ¶¶ 22, 26-27, 45. Indeed, even following receipt of BANA's February 29, 2016 correspondence and Seterus's NOE Response which indicate that BANA had requested a refund for the same property tax payment and those sums would be applied to the Subject Loan upon receipt, the Borrowers made no effort to inform anyone of their receipt and possession of these funds. *See* SOMF ¶ 45.

Therefore, even if Borrowers could establish a violation of RESPA or ICFA or a breach of contract claim against Seterus – they cannot – their claim would still fail because they cannot establish a causal connection to their purported actual damages. *See e.g., Moore*, at *36-37.

**VII.   No statutory damages under RESPA for Pattern and Practice.**

Under RESPA, statutory damages are only awarded "in the case of a pattern or practice of noncompliance." *See* 12 U.S.C. 2605(f)(1)(B). Here, Borrowers' purported RESPA claim is

premised upon the purported failure to properly respond to a single QWR. *See* Compl., ¶¶ 168-197. Common sense dictates that there cannot be a pattern or practice premised upon a single incident, and courts have found that to establish a pattern or practice there must be more than two alleged violations. *See Ploog v. HomeSide Lending, Inc.,* 209 F.Supp.2d 863 (N.D. Ill. 2002) (finding five instances sufficient); *Maxwell v. Fairbanks Capital Corp.,* 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (two failures to comply did not constitute a "pattern or practice"); *In re Tomasevic*, 273 B.R. 682 (Bankr. M.D. Fla. 2002) (one failure is insufficient); *Fournier v. Bank of America Corp.,* Case No. 13-cv-00702, 2014 U.S. Dist. LEXIS 13447 (N.D. N.Y. Feb. 2, 2014) (three instances of non-compliance insufficient).

Further, it is undisputed that Seterus maintained policies and procedures for responding to QWRs in compliance with the applicable provisions of RESPA and Regulation X. *See* SOMF ¶ 53. Also, there is no dispute that the Seterus NOE Response was not a form letter, and instead, the Seterus NOE Response was crafted specifically in response to the Borrowers' NOE by a Seterus employee trained upon Seterus's policies and procedures. *See* SOMF ¶ 52; NOE Response (Ex. M). *See e.g., Renfroe v. Nationstar Mortgage LLC,* 822 F.3d 1241, 1247 (11th Cir. 2016) (noting allegations asserting practice of use of form letters and boiler plate language as grounds to deny motion to dismiss). Accordingly, Borrowers' cannot demonstrate the existence of a pattern and practice of non-compliance with RESPA.

WHEREFORE, Seterus respectfully requests that this Court grant judgment in favor of Seterus and against Borrowers, and for such further and additional relief as the Court determines is reasonable and appropriate.

Dated: August 25, 2017            Respectfully submitted,

           **SETERUS, INC.,**

Ralph T. Wutscher
Coleman J. Braun
Allan Z. Enriquez
MAURICE WUTSCHER LLP
105 W. Madison Street, 18th Floor
Chicago, Illinois 60602
Tel.  (312) 416-6170
Fax  (312) 284-4751       By:    /s/ Coleman J. Braun
                                   One of Its Attorneys

**Certificate of Service**

I, Coleman J. Braun, an attorney, hereby certify that on **August 25, 2017** service of a true and correct copy of this document and any referenced exhibits was accomplished pursuant to ECF on all parties who are Filing Users.

                           /s/ Coleman J. Braun